The first case for argument this morning is 157067, Jordan v. McDonald. Mr. Hontos, whenever you're ready. Good morning and may it please the court, Alex Hontos on behalf of the veteran, Craig Jordan. The court should reverse for either of two independent reasons. The first pertaining to a misinterpretation of the law with respect to lay testimony. The second, a misinterpretation of the benefit of the doubt rule at 5107. I'd like to address the issue of lay testimony first. In this case, the secretary excluded nexus evidence based on lack of competency without first finding- Can I ask you just what went down here? I mean, this is just, I mean, you say they excluded it. As I read the record, I mean, it seems that at one point it was sent back by the record says the board found that the opinions were deficient and not probative and it did not appear to have considered the appellant's contention that he experienced back problems, blah, blah, blah. So it seems like at least at one point they actually sent it back because they said you've got to consider the appellant's contention. That's exactly right. And then fast forward and we're here and I understand that the last sentence in the opinion does refer to lay testimony and being not competent. The sentence before, and indeed a lot of what was said in this case, discredits the appellant's statements based on credibility and not based on lack of technical confidence. If I'm right about that, then where is your argument that the board erred or the CAVC erred? Sure. Look at joint appendix page 32. This is where the error, this is the board opinion and this is where the error is crystallized. You can see it and you can see a competency determination that was made. And I'll quote the pertinent language from the board's decision. This lay evidence does not constitute competent evidence and lacks probative value. That's the penultimate sentence. No, I understand that. But if you look at the paragraph that precedes that, it starts off the board has not overlooked the veteran's contentions, but finds the contradictory nature of his statements cast out on his assertions that he suffered. And it all goes on to talk about why they conclude that his statements, while considered, were just not credible. So is there something beyond the statements they're talking about here that he put forward and they rejected because it was incompetent? Are we just talking about his statements as to when he was experiencing pain, et cetera? Just his statements for the lay testimony argument. The 5107 argument is separate. But for purposes of the lay testimony, yes. So what are we to make of, I understand, I appreciate what you're saying about that final paragraph. Would you not agree that they did right under your view of the law with respect to their consideration of the statement in the next to the last paragraph? No, I don't think so. I think the record shows that there is at a minimum significant confusion in the analysis. Competency is a threshold determination. Competency happens first. Credibility happens after. There's no doubt that there's some loose language in this opinion that is problematic for purposes from a government standpoint and inconsistent with what we've said repeatedly about lay testimony. But having said that, the real question is the point that Chief Judge Prost has pointed out. Doesn't that make those loose statements essentially harmless error? In other words, if it's not credible anyway, why does it matter if they found it not to be competent? I don't think that's what the opinion says. If you had a very clear alternative analysis, so here's the example where a harmless error might save this decision. If you had a decision that said, we don't find him credible, or we don't find him competent, or we do find him competent, you have a very clear competency determination made. And then you had in the alternative, even if he was competent, we find that he is incredible. That may preserve the decision. But we don't have that here. In fact, we have the exact opposite. How odd? What a strange analysis to talk about credibility in sort of a passing reference to credibility, and then to talk about competency, and to very clearly exclude. We have to take the language at face value. And the language says he is incompetent to testify about this. It also says, in short, his claim of experiencing chronic pain since injuring his back in service is not found to be credible. So if we read the board's opinion, you know, just based on its plain language, it made two separate findings. One, Mr. Jordan's testimony is not credible. Two, Mr. Jordan's testimony also, quote, unquote, is not competent. So if we see those as two alternative findings for dismissing his testimony, why should we reach the legal question that you're raising, given that we have a fact finding that, due to his contradictory statements, his testimony about long-term back pain is not credible? Sure. So a couple of responses. Number one, the court would have to be comfortable that that is what actually happened here. Let's assume that we think that's what happened here. Look at the court's decision in Buchanan. Chief Judge Prost, you wrote that decision. In that case, there was Merck below, just like we have Merck here. There was Merck as to credibility and Merck as to competency. And the court did not hesitate to reach the issue of competency to find that there was a misinterpretation of the law with respect to competency and reverse. So Buchanan provides a way to- I don't understand what the point is, though, if we find that, you know, this is a fact finding that we have to defer to, right, that we can't even touch. The board finding Mr. Jordan to not be credible. So what would the point be, even if you were right, and we were even to agree with you on the legal question about whether his lay testimony is competent, what would be the point of any kind of remand, given the untouchable fact finding that he's not credible? I want to be very clear. We're not challenging the fact finding of credibility. We suggest that didn't happen, but we wouldn't challenge that because that's outside the court's jurisdiction under 7292. But look at the Pruitt case. No, no. I'm just trying to ask you as a practical matter. That's right. What would be the point of sending this back? Sure. Under Pruitt, this court's unpublished decision in 2013, there was Merck in the record as to competency, the same kind of Merck here. And the court reversed and remanded because it said, we can't figure out what's going on here. And the error was the same error. The court positioned that because they made the mistake on competency, that perhaps the credibility determination would not have been enough in the board's view, had they not also thought he was incompetent. That's right. If there was a problem at the threshold, then there's absolutely no way to suggest that that threshold problem didn't affect something on credibility. Can I ask you, just step back a minute. Yes. Their statement on competence, I mean, it doesn't a lot depend on what he was trying to put forward here. I mean, we're talking about whether there's an in-service connection. But he didn't put forward testimony about a medical kind of testimony, right? He wasn't trying to get anything in other than, I got hurt here. I felt badly in this year, right? That was the sum and substance of his testimony. That's right. So when you even look at this paragraph at the end, it sounds like this has no relationship to anything. He wasn't trying. What it says is, it seems like a canned paragraph that somebody stuck in here because it said he doesn't have the training to render a diagnosis or an opinion of medical causation. Well, whether that's right or wrong as a matter of law, whether it should have been excluded on that basis, he wasn't trying to render an opinion, right? His late testimony had to do with just what happened when, and that's what they're talking about in terms of his credibility. Which makes sense. So I'm having a hard time seeing how this, even if it's wrong, renders any harm because even if they were right, for example, and that he couldn't do it, it has no consequence to this case because that's not the kind of testimony he was trying to render, right? The court is correct in that he was not trying to opine as to etiology or to diagnosis, which makes this even more wrong. There should be no discussion of this kind of analysis in this case. As the court pointed out, he was simply trying to talk about the continuity of symptoms when he experienced his low back pain. If you look at the court's analysis, the court has been very clear in under 1154 and 3.303 and Jandrow and Buchanan and all the precedents, it's very clear that the secretary must give due consideration to these statements. And even for etiology, even for issues like diagnosis, there are times when a veteran's lay testimony can be sufficient. Yeah, but what does that have to do with this case? He was merely trying to describe, he was doing something far less, far sort of easier to describe what he was doing and yet there's a competency determination involved. What does that have to do with anything? I agree with the point. It shouldn't be in here. It doesn't make any sense when he's just trying to speak to issues of describing his symptoms. What issues? Which of his statements, which would have been included if they hadn't said that, that were necessarily excluded under the credibility? It seems to me their analysis of credibility, again, rightly or wrongly, gets rid of everything he was trying to put forward in terms of lay testimony. That's because of credibility. He was trying to speak to nexus. Which is the only issue we're talking about. It's the only issue in the case. He had an in-service disability and he has a present disability. So the only issue at issue is the nexus. And he was trying to give testimony to provide support for the nexus piece of the three-part test. But it wasn't to establish anything medical. It was just, this happened to me when, and this is when I started experiencing pain. Clearly they considered that evidence. Wasn't that the same evidence that the case was actually sent back because they said it's not clear to us that you considered everything he said and we want you to consider it? Well, it was sent back for purposes of a new medical examination because the medical examiner had not fully and accurately analyzed the record. But I think this is... And they still didn't satisfy the remand order because they never did do a current diagnosis. That's right. And we don't challenge that on appeal. That is in the Veterans Court's decision. We're not quibbling with that finding. But it said when they remanded it, they said because the examiners do not appear to have considered the appellant's contention, he experienced back problems since the in-service incident. So wasn't that point of remand? Yeah, I don't dispute that. But I don't think that gets to a point where the language in the board opinion on remand that makes a competency determination. The same kind of thing that happened in Buchanan, the same kind of thing that happened in Pruitt, where this court remanded for fear that the secretary is categorically excluding lay testimony for purposes of much higher things, things like etiology and causation. Here you have something far less than that. Before your time runs out, do you want to spend a couple of minutes on your second question? I'd be happy to. Thank you. So as to the 5107, the benefit of the doubt rule, this is the Sandlot baseball rule. Tie goes to the runner. The tie goes to the veteran. In this case, I want to sort of trace the arc of the error. Look at Joint Appendix 72. That's the examiner's opinion. You first see the error in Joint Appendix 72. The statement is the current disability is only at least as likely as not due to his post-service injuries. If something is only at least as likely as not due to post-service injuries, then it's also true that it's at least as likely as not due to his in-service injuries. Did the Veterans Court reach this issue? The Veterans Court did. This was raised below. But did it discuss this issue? 5107 was discussed. No, the benefit of the doubt rule. Was it actually addressed by the Veterans Court? I don't think it was. I don't think it was because I didn't see anywhere in your briefing where this issue was raised to the Veterans Court. Right. So let me point you to Joint Appendix 1155 and 1156. This issue was raised below. Had I had the privilege of being counseled below, I might have raised it more artfully. But it was raised. And the Veterans Court, more importantly, at Joint Appendix 9, quoted this very language. Again, trace the arc of this error. The language appears at each step in the process. So where at 1155, 1156? Could you quote me? I know you cited this in your brief, but what would be the best quotable quote that would show the Veterans Court that, in fact, Mr. Jordan was challenging the misapplication of the benefit of the doubt rule from the statute? I think, let me give you 1163 as well. That's actually the brief citation. How about I provide that information on rebuttal so I don't do that? In any event, you can see this error that goes through all this language. This clear misinterpretation of the benefit of the doubt rule that suffuses this decision. There's no way to distract from it. There's no way to write around it. There's no way to discount it. It appears in the Veterans Court's decision. It appears in the board's decision. It appears in the regional office decision, and it appears in the examiner's opinion. We'll restore a few minutes for rebuttal. Thank you. Good morning, and may it please the court. This court lacks jurisdiction to consider the merits of Mr. Jordan's arguments, which challenge the application of law to fact. I'll start first with the lay evidence issue. As to lay evidence, we consider that issue constantly, and we constantly remind the board that they're getting it wrong, and that lay evidence is competent evidence. How would we not have jurisdiction to review that if, in fact, they found his testimony not competent? Because, Your Honor, in part because the board recognized that rule applied here. The board indicated very clearly in its discussion of the relevant legal principles, citing the decision of Buchanan and Jandro and Davidson, that there is a need to consider the lay evidence and the medical evidence, and that is at page JA24 and 25. The board, and I'll quote from the board's decision at JA24, the board had noted that it was directed to assess both medical and lay evidence. It went on to say, citing Davidson, that in certain circumstances, lay evidence may be sufficient to establish medical diagnosis. But then it went on to say that in these circumstances, it's not competent. When all he's talking about is how long he's experienced back pain. How can he not be competent to say that? Well, Your Honor, there are two paragraphs on that page of the board's decision, one of which, as the court's questions have gotten to, relates to the question of the credibility. We can get to that later, because that's the question of whether or not there might be harmless error here. But clearly there's error in saying that he's not competent to testify as to how long he's experienced back pain. Well, what the board specifically said is not that lay evidence can never be competent evidence. And that is the problem under the court's precedent, is a categorical statement. Counsel referred to the Buchanan decision. Where the board has gotten in trouble is where it says that categorically lay evidence may not be sufficient to establish a diagnosis or causation. The board did not do that in this instance. Well, it did find this particular testimony not competent, correct? It did say that it was not competent. When it said it's not competent, that means it's dismissing it out of hand, right? That it's not giving the testimony of Mr. Jordan any weight. Is that a fair understanding of what the board did when it said the evidence is not competent? It is a fair understanding, I think, in terms of what the board found in respect of the court. Why is it that it can... I mean, if the board wanted to say, we don't give his testimony as significant a weight as the counter-physician testimony, that's fine. But how can it say that it can dismiss the lay testimony completely out of hand as not competent when we have case after case that says you have to consider it? Well, Your Honor, the board did consider the lay evidence. What makes this case different and what makes this case like the King case is that the board, notwithstanding what it said... The board said in King is very similar to what the board said here in terms of the language of the board's decision, saying it's not competent, it lacks probative value. But what made King different from Buchanan and Jandro, et cetera, was the board did consider the lay evidence. And that's what the board did here. So notwithstanding what it said... Why doesn't the board just stop saying these ridiculous things and actually look at the evidence and then assess it? Why do they have to always repeatedly say that it's not competent when we've repeatedly told them that it is? Well, Your Honor, I certainly don't know the answer to that question. What I can say is with respect to the board's decision in this case, the remand that the chief judge referred to is important because first of all, if you look at the record at JA 101, when the board remanded for an additional VA medical examination, it specifically asked the VA medical examiner to consider the competent contentions by the veteran. And this is the same judge that issued the board decision in 2013 that we're talking about. What that suggests is that the board understood that lay evidence may be competent in certain situations. And in this board decision that we're talking about, the board did consider his testimony to be competent, but on a different question of causation. It considered it competent on the question of continuity of the symptoms. And that's what counsel has suggested. Of course, I'm not so sure how they're different in the sense that if you're trying to figure out what caused a back injury, if the symptoms were continuous from the first injury through any later injuries, that does relate to causation, does it not? It does, Your Honor, but there are different ways of proving service connection. And one of them is under the regulations, and there's 38 CFR 3.307A, where if you have a chronic disease such as an arthritis type of disease, and it showed to have continuous symptoms, that is an independent way of proving nexus. And the board in this decision was considering that question with respect to arthritis. So that is another way of looking at whether or not service connection can be proven. So in our view, that page on JA31 of the board's decision, when it's considering his contentions, these contentions relate to his position, his statement that my symptoms are continuous over a period of time. Let me see if I can understand this with a hypothetical. What if the veteran during his service was in combat, was in some kind of firefight and experienced a very bad fall? And up until that point, the veteran had a very healthy back. But ever since that day, he experienced back pain. And ever since that day, he never had a good night's sleep because of the back pain. And then he seeks benefits and says, I've had bad lower back pain for several years in a row ever since my time in service due to this bad fall. And I haven't been able to get a good night's sleep, and I'm taking Advil every single day of my life. And then the board said, well, that Mr. Veteran, you're not a doctor. You've had no medical training. And so your lay testimony is not competent evidence. And therefore, we give it no weight as to medical diagnosis or medical causation. Would you think that that's appropriate? No, that would be a problem because under the court's precedent. But that's not the facts that we have here. But under the court's precedent... I know that's not the facts we have here, but it feels pretty similar to what we have here. Well, Your Honor, the reason this case is different from the hypothetical that you're describing is because the board did consider the lay statements and the continuity of the symptoms that he was alleging occurred over time. And this was not a categorical exclusion. The problem that was described in the Buchanan case and very clearly in Davidson was where the board had somehow suggested that lay evidence could not be competent because it was lay evidence. It's Mr. Jordan's lay evidence. And what the court recognized in Jandro was that the board as the fact finder can make a determination as to competence. And lay evidence may or may not be competent. You couldn't get more categorical. All they're doing is talking about the extent to which they have suffered back problems and back pain over the course of years. For them to say that that particular evidence is not competent evidence is akin to saying no lay evidence is competent evidence. How can you distinguish between a categorical finding of lay evidence being not competent and this kind of lay evidence, which seems to be the most obviously competent evidence, not being competent? Well, Your Honor, in the court's decision at JA-31, in the same paragraph, it refers to the fact that he did not have the training, the expertise to render an opinion regarding musculoskeletal disorders. So the board is recognizing, is not making an across-the-board statement about lay evidence in every particular case or every given case. It is talking about competence as applied to these facts. That's what makes this decision controlled by King. I think you're hurting yourself more than you're helping yourself because, frankly, this is a silly argument. Musculoskeletal, I mean, what more easily could you see a lay person being able to testify to? Why don't you just concede that there is a problem with the board's competency finding, but that the credibility finding renders that harmless? I don't understand why you're trying to defend this. Well, Your Honor, our position is that the board complied with, applied the appropriate legal standard, and that the King decision is directly on point. And what happened in King, and harmless error may be another way of looking at it, but in effect, what was being challenged there was the application of law to fact. And that is the appropriate resolution according to the government in this case, is that because it's the application of law to fact, the court does not have jurisdiction to review it under 7292. Now whether or not the board could have described its reasoning better, I agree with Your Honor that there is some loose language in the court's decision. But you ultimately come down to, and below what the issue was, whether there was an adequate statement of the reasons or basis for the board's decision. And the Veterans Court found that, rejected that argument. But that's not the argument that's being made here. Is your reading of this paragraph, I mean, what the board starts off by talking in this final paragraph is talking about his credentials to render a diagnosis or a confident opinion as to medical causation. Did he do any of those? No, Your Honor, and this gets to your question. And so when they say this lay evidence, are you saying that they're talking about in theory lay evidence that tries to render a diagnosis or a confident opinion is not confident, but essentially are you telling us that that has nothing to do with this case because his lay Well, Your Honor, it's unclear in terms of what this lay evidence is referred to. I think the fairest reading of that paragraph is that it's referring to the same statements that we've been talking about, the ones where he says, I've had ongoing symptoms, things of this nature. But there's no question, as counsel noted, Mr. Jordan never said, I have a medical opinion and I'm trying to, you know, offer some testimony about my diagnosis. Do you want to turn to the next question? Yes, Your Honor, I would be happy to. On the benefit of the doubt rule. Yeah, that sentence is not a good sentence, right? I mean, one can say everything at some level is mush, but that sentence really points you in the direction that we are talking about equipoise. Well, no, Your Honor, respectfully, the board's decision did not find that the evidence was in equipoise. And of course, that benefit of the doubt rule is triggered when you have an approximate balance of the evidence. What the board stated on JA-21 is that the preponderance of the evidence fails to establish a service connection. And on JA-34, it noted in the same page that we were looking at, that it had considered the benefit of the doubt rule, but found that the preponderance of the evidence was against the issue. The board did not misinterpret the statute or that rule. And the portion, the language that Mr. Jordan is focusing on is a statement made by the medical examiner, not by the board. And so what the board did was it simply recounted what the medical examiner said. We're dealing with different page numbers. I'm sorry. Can you tell me, point to me what the board decision, where are you looking at? On JA-31 of the board's decision, there is, this is the portion that Mr. Jordan... The examiner, well, they quote the examiner. The examiner believed... Right. So what the board is talking about is what the examiner believed. And the examiner doesn't find facts. Of course, the board does. And the board, if you look at the examiner's decision, this will become even more clear. On JA-72, counsel referred to that page, the VA medical examiner was asked to fill out a questionnaire. And the VA medical examiner checked a box that said the client condition was less likely than not, less than 50% probability, incurred in or caused by the in-service injury. That's a JA-72. And the board, the portion of the board's, sorry, the medical examiner's report that Mr. Jordan focuses on says very clearly that the, her opinion was that the low back condition with residual is not caused by, or the results were aggravated by activities in military service, but is rather at least as likely as not due to intervening work-related injuries. In other words, the doctor is saying that there's no service connection, but it's at least as likely as not due to these post-service work injuries. But the doctor was allowing for the possibility that there may be some other reason besides these work injuries that may have caused his current disability. But that's far and apart from saying that the evidence is an equipoise. Two more points on that topic. One is, as counsel indicated, or referred to portions of the record, there is, this argument was not raised below, and accordingly it was waived. The benefit of the doubt argument was not raised below. And there's also a jurisdictional problem. If you look at the board's decision, it very clearly says, the benefit of the doubt rule applies where the evidence is an equipoise or approximate balance. It recognized the appropriate legal standard. And then it noted that at JA-25 of its decision. Thank you very much. Thank you. I'll give you three minutes, rebuttal. Thank you. So going back to the 5107, Judge Chen, your question about the best language, I'd direct you to Joint Appendix 9, which is the veteran court's decision that relies on this language. And under the court's precedence in cases like Chandler, we cite these cases on our brief. Wait, can you just tell us what, looking at JA-9, what you mean? JA-9, the last sentence on JA-9, based on a comprehensive review. Do you see that sentence? And if you look at the court's precedence in Chandler and Forshee, a reliance on a misinterpretation below is sufficient to preserve the issue. And in particular, when it's the only issue in the case. This is only about nexus. And this is a critical issue that was raised at all of these points along the adjudicatory process, from the examiner all the way through. Now the secretary argues that, well, a box was checked. And there's boilerplate language in the opinion. And that means that everything's right. And that's wrong. I don't know. But you're saying that's one reference in the CABC opinion. What indicates to us that it was something that was adjudicated or challenged before or dealt with by the CABC? Well, it was clearly relied on by the, the argument is that it was relied on by the veterans court. It was part of the decision. And because of that, this court, in exercising its review function, can address that issue. I mean, the standard is sort of fair notice here. It is not an exacting standard. And when the only issues in the case involve the lay testimony and this benefit of the doubt rule, when those are the core issues on nexus, we think that the court should exercise its review of these issues. So this notion that boilerplate and murk and checking boxes shows that there was no error, the court should reject that. A competency determination was made where there was no business to make a competency determination. A clear error of one of the most simple tenets of veterans law, section 5107's benefit of the doubt rule, happened in this case. Now, this is the 10-year anniversary of Buchanan and of Jandrow and of cases like that. It's also the 10-year anniversary of Mr. Jordan filing his claim for benefits in this case. And the secretary is still getting this wrong. In cases like Robinson and Assad, the court can see where the secretary got it right, or got it right because this court reversed and remanded and said, you have to get it right. And we ask this court to set the record straight here once again and make the secretary follow the court's precedence. For those reasons, we ask the court to reverse. Thank you. Thank you. We thank both counsel and the cases.